1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Rachel Herrick Kassabian (Bar No. 191060)
2     rachelkassabian@quinnemanuel.com
   555 Twin Dolphin Drive, 5th Floor
3  Redwood Shores, California 94065
   Telephone: (650) 801-5000
4  Facsimile: (650) 801-5100

5     Rachel Juarez (Bar No. 273133)
   racheljuarez@quinnemanuel.com
6  865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-2543
7  Telephone: (213) 443-3000
   Facsimile: (213) 443-3100

8

9  Attorneys for Defendants OVH SAS and
   Hebergement OVH Inc.

10

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  PERFECT 10, INC., a California corporation, | CASE NO. 2:14-CV-05969-R-FFM |
| 16          *Plaintiff,* | **DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (AS TO OVH SAS) AND FAILURE TO STATE A CLAIM (AS TO OVH SAS AND HEBERGEMENT OVH INC.)** |
| 17     vs. | |
| 18  OVH SAS, a French Company; Hebergement OVH Inc. a Canadian corporation; and DOES 1 through 100, inclusive, | |
| 21          *Defendants.* | Date: March 2, 2015<br>Time: 10:00 A.M.<br>Place: Courtroom 8 – 2nd Floor<br>Judge: Hon. Manuel L. Real |

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... ii

NOTICE OF MOTION AND MOTION TO DISMISS ................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................. 1

I.  INTRODUCTION ................................................................................ 1

II.  STATEMENT OF FACTS .................................................................... 2

    A.  The Parties ................................................................................... 2

    B.  Perfect 10's Allegations of Infringement .................................. 5

    C.  Facts Subject to Judicial Notice ................................................ 5

    D.  OVH SAS's Lack of Contacts With This Forum ....................... 6

III.  LEGAL STANDARDS ........................................................................ 7

    A.  Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) ........ 7

    B.  Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ........ 8

IV.  ARGUMENT ...................................................................................... 10

    A.  THERE IS NO BASIS FOR EXERCISING PERSONAL JURISDICTION OVER OVH SAS ........................................... 10

        1.  OVH SAS is Not Subject to General Jurisdiction in California ................................................................................. 10

        2.  OVH SAS is Not Subject to Specific Jurisdiction in California ................................................................................. 11

        3.  OVH SAS is Not Subject to National Jurisdiction .................... 12

        4.  Jurisdiction over OVH SAS Would Be Unreasonable. ............. 13

    B.  PERFECT 10 FAILS TO PLEAD A VALID CLAIM FOR COPYRIGHT INFRINGEMENT ........................................... 15

        1.  Perfect 10 Fails to Allege a Single Instance of Territorial Infringement to Support Either Its Direct or Contributory Infringement Claims ............................................................... 15

        2.  Perfect 10 Fails to Allege Volitional Conduct by Defendants, Which is Necessary for Direct Copyright Infringement .......................................................................... 21

CONCLUSION ........................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)....................................................................................8, 9, 18

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.,*
   566 F.3d 1012 (Fed. Cir. 2009)............................................................................11

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,*
   223 F.3d 1082 (9th Cir. 2000) .............................................................................10

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007).....................................................................................8, 9, 18

*Brayton Purcell LLP v. Recordon & Recordon,*
   606 F.3d 1124 (9th Cir. 2009) .............................................................................11

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985)...............................................................................................8

*CoStar Group, Inc. v. LoopNet, Inc.,*
   373 F.3d 544 (4th Cir. 2004) .........................................................................21, 22

*Collegesource, Inc. v. Academyone, Inc.,*
   653 F.3d 1066 (9th Cir. 2011) .............................................................................11

*Columbia Pictures Indus., Inc. v. Fung,*
   No. CV 06-5578, 2009 WL 6355911 (C.D. Cal. Dec. 21, 2009).........................19

*Daimler AG v. Bauman,*
   134 S. Ct. 746 (2014)...........................................................................................10

*Data Discount, Inc. v. System Tech. Assoc. Inc.,*
   557 F.2d 1280 (9th Cir. 1977) ...............................................................................7

*Doe v. Unocal Corp.,*
   248 F.3d 915 (9th Cir. 2001) .................................................................................8

*Ellison v. Robertson,*
   189 F. Supp. 2d 1051 (C.D. Cal. 2002) ..........................................................22, 23

*Ellison v. Robertson,*
   357 F.3d 1072 (9th Cir. 2004) ................................................................15, 21, 22

*Elmo Shropshire v. Canning,*
   No. 10-CV-01941-LHK, 2011 WL 90136 (N.D. Cal. Jan. 11, 2011).................16

*Field v. Google Inc.,*
   412 F. Supp. 2d 1106 (D. Nev. 2006)...........................................................21, 24

*Goodyear Dunlop Tires Ops., S.A. v. Brown,*
   -- U.S. --, 131 S. Ct. 2846 (2011) ......................................................8, 10

*Kirtsaeng v. John Wiley & Sons, Inc.*
   -- U.S. --, 133 S. Ct. 1351 (2013) ................................................................15

*Greeson v. Imperial Irr. District,*
   59 F.2d 529 (9th Cir. 1932) ........................................................................19

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.,*
   485 F.3d 450 (9th Cir. 2007) ......................................................................13

*Int'l Shoe v. Washington,*
   326 U.S. 310 (1945) ......................................................................................7

*Kramer Motors v. British Leyland, Ltd.,*
   628 F.2d 1175 (9th Cir. 1980) ......................................................................8

*Lake v. Lake,*
   817 F.2d 1416 (9th Cir. 1987) ......................................................................8

*Lee v. City of Los Angeles,*
   250 F.3d 668 (9th Cir. 2001) ...................................................................9, 19

*Liberty Media Holdings, LLC v. Vinigay.com,*
   No. CV-11-280-PHX-LOA, 2011 WL 7430062 (D. Ariz. Dec. 28, 2011)..........19

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*
   545 U.S. 913 (2005) ....................................................................................15

*Moss v. U.S. Secret Serv.,*
   572 F.3d 962 (9th Cir. 2009) ........................................................................9

*Omega S.A. v. Costco Wholesale Corp.,*
   541 F.3d 982 (9th Cir. 2008) ......................................................................15

*Parker v. Google, Inc.,*
   422 F. Supp. 2d 492 (E.D. Pa. 2006) .......................................................21, 23

*Pebble Beach Co. v. Caddy,*
   453 F.3d 1151 (9th Cir. 2006) .................................................................12, 13

*Perfect 10, Inc. v. Amazon.com, Inc.,*
   508 F.3d 1146 (9th Cir. 2007) .................................................................17, 21

*Perfect 10, Inc. v. Giganews, Inc.,*
   No. 2:11-cv-07098-ABC-SH, 2013 WL 2109963
   (C.D. Cal. March 8, 2013) ................................................... 3. 22, 23, 24

*Perfect 10 v. Google Inc.,*
   No. 04-cv-09484 (C.D. Cal.) .........................................................................2

*Perfect 10 v. Rapidshare, Inc.,*
   No. 3:09-cv-02596 (S.D. Cal.).......................................................................3

1  *Perfect 10 v. Visa International Service Association,*
   No. 04-cv-00371 (N.D. Cal.) ..........................................................................2
2
3  *Perfect 10 v. Yandex,*
   962 F. Supp. 2d 1146 (N.D. Cal. 2013)..............................3, 16, 17, 21
4  *Religious Tech. Ctr. v. Netcom On-Line Commission Services, Inc.,*
   907 F. Supp. 1361 (N.D. Cal. 1995)...........................................21, 23
5
6  *In re Rigel Pharm., Inc. Sec. Litig.,*
   697 F.3d 869 (9th Cir. 2012) ........................................................9
7  *Rio Properties, Inc. v. Rio Int'l Interlink,*
   284 F.3d 1007 (9th Cir. 2002) .....................................................7
8
9  *Rundquist v. Vapiano SE,*
   798 F. Supp. 2d 102 (D.D.C. 2011) ...........................................16
10 *S. Grouts & Mortars, Inc. v. 3M Co.,*
   No. 07-61388-CIV, 2008 WL 4346798 (S.D. Fla. Sept. 17, 2008).........19
11
12 *Schwarzenegger v. Fred Martin Mot. Co.,*
   374 F.3d 797 (9th Cir. 2004) ...................................... 7, 8, 11, 13
13 *Subafilms Ltd. v. MGM-Pathe Comm'n Co.,*
   24 F.3d 1088 (9th Cir. 1994) ..................................... 16, 17, 21
14
15 *Trentacosta v. Frontier Pac. Aircraft Indus,, Inc.,*
   813 F.2d 1553 (9th Cir. 1987) ...................................................17
16 *Verde River Irr. & Power District v. Salt River Valley Water Users' Ass'n,*
   94 F.2d 936 (9th Cir. 1938) .........................................................20
17
18 *Web.com, Inc. v. Go Daddy Grp., Inc.,*
   No. 06-1461, 2007 WL 7035105 (N.D. Ga. Aug. 3, 2007)..................12
19 *Yahoo! v. La Ligue Contre La Racisme,*
   433 F.3d 1199 (9th Cir. 2006) ....................................................11
20
21 *Ziegler v. Indian River Cnty.,*
   64 F.3d 470 (9th Cir. 1995) ........................................................14
22                             **Statutes**
23 17 U.S.C. § 106 .........................................................................15
24 Fed. R. Civ. P. 10(c) ..................................................................9
25 Fed. R. Civ. P. 12(b) ..........................................................*passim*
26 Fed. R. Evid. 201(b) ...................................................................19
27
28

1

## <u>Other Authorities</u>

2

C. Wright & A. Miller, 5B FEDERAL PRACTICE AND PROCEDURE,
§ 1357 (3d ed. 2014) ..................................................................................................9

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 2, 2015 at 10:00 A.M., or as soon thereafter as counsel may be heard, before the Honorable Manuel L. Real, in Courtroom 8 of the United States Courthouse for the Central District of California, Western Division, 312 North Spring Street, Los Angeles, California, Defendant OVH SAS will and hereby does move the Court to dismiss the Complaint for Copyright Infringement pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, and Defendants OVH SAS and Hebergement OVH Inc. will and hereby do move the Court to dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim.

This motion is based on this notice of motion and supporting memorandum, the declaration of Stéphane Lesimple, Defendants' Request for Judicial Notice, and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

DATED:   January 21, 2015          QUINN EMANUEL URQUHART &
                                   SULLIVAN, LLP


                              By  Rachel Herrick Kassabian
                                   Rachel Herrick Kassabian
                                   Attorneys for Defendants OVH SAS and
                                   Hebergement OVH, Inc.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This action should be dismissed for two reasons.

<u>First</u>, Defendant OVH SAS should be dismissed from this case for lack of personal jurisdiction.   OVH SAS is a French corporation that provides self-managed (or "dedicated") computer servers, cloud hosting, mutualized web hosting, domain registration, and VOIP telephony services throughout Europe.   Its headquarters, business operations, data centers and personnel are all in France. OVH SAS has no U.S.-based business operations, employees, officers, directors, property, or investments; nor is it registered to do business in, taxed by, licensed by, or regulated by California or the U.S. federal government.   Not surprisingly, OVH SAS earns just a trace amount of incidental revenues from U.S.-based sources.   The only reason OVH SAS is being haled into a U.S. court now is because it is the latest target of serial litigant Perfect 10, an adult entertainment publisher and oft-described "copyright troll" which has unsuccessfully sued dozens of other companies on similar—albeit flawed—legal theories.   The Court should dismiss OVH SAS from this case because it lacks jurisdiction to hear claims against this French company with no significant connection to California or the United States.

<u>Second</u>, this case should be dismissed as to both OVH defendants, OVH SAS and Hebergement OVH Inc., because Perfect 10 has failed to state any actionable claim for relief.   Specifically, Perfect 10's claims for both direct and contributory copyright infringement are not cognizable under the U.S. Copyright Act because Perfect 10 has affirmatively pleaded facts which, coupled with judicially noticeable facts, confirm that the alleged infringement that forms the basis of its claims occurred outside the United States.   Because the U.S. Copyright Act is territorial in nature and does not extend to acts of infringement occurring outside the United States, Perfect 10 has pleaded itself out of court.

Perfect 10's claims for direct infringement fail for the additional reason that

1   Perfect 10 has not alleged any volitional conduct by the OVH defendants.   To the

2   contrary, it has alleged only that the OVH defendants are passive providers of

3   computer server leasing services, and that third party website operators committed

4   the acts of alleged infringement—i.e., uploaded purportedly copyrighted images to

5   certain websites.   The Court should dismiss Perfect 10's direct infringement claims

6   for this reason as well.

7   **II.     STATEMENT OF FACTS**

8        A.     The Parties

9        ***Perfect 10, Inc.***   Perfect 10 used to publish a magazine featuring nude

10   women, although the magazine never turned a profit on its operations.   *See*

11   Complaint ¶¶ 17, 23.   Perfect 10 has since become a serial copyright litigant,

12   bringing lawsuits against virtually every major internet company, including

13   Amazon.com, Microsoft, and Google.[1]   The gist of all these lawsuits is the same:

14   Perfect 10 claims that defendants, merely by operating ordinary Internet services

15   such as search engines, blogs, webhosting, server rentals, cloud storage or usenet

16   newsgroup access, directly and indirectly infringe Perfect 10's copyrights in its

17   massive adult image library.   Perfect 10 has suffered defeat after defeat in its prior

18   lawsuits, including having its complaints dismissed, spoliation orders entered

19   against it, summary judgment granted against it, and final judgment entered against

20   it.[2]   Perfect 10 has lost so many preliminary injunction motions that it doesn't

21   _____

22   [1]   *See, e.g., Perfect 10 v. Visa Int'l Service Ass'n*, No. 04-cv-00371 (N.D. Cal.)
   ("*Visa*"); *Perfect 10 v. Google Inc.*, No. 04-cv-09484 (C.D. Cal.) ("*Google*");

23   *Perfect 10 v. Rapidshare, Inc.*, No. 3:09-cv-02596 (S.D. Cal.) ("*Rapidshare*");
   *Perfect 10 v. Giganews, Inc.*, No. 11-cv-07098 (C.D. Cal.) ("*Giganews*"); *Perfect 10*

24   *v. Yandex*, No. 12-cv-01521 (N.D. Cal.) ("*Yandex*").

25   [2]   *See, e.g., Visa*, Dkt. Nos. 39, (first motion to dismiss), 51 (second motion to

26   dismiss) (granting successive motions to dismiss because defendants did not control

27   infringement) *aff'd* 494 F.3d 788 (2007); *Google,* Dkt. Nos. 735 (Order Granting
   Google Inc.'s Motion For A Document Preservation Order To Prevent Further

28

1  bother to even bring them anymore.[3]  Perfect 10's lawsuits have become a spectacle

2  in the press.   *See, e.g.*, "Perfect 10 Loses Yet Another Ridiculous Copyright

3  Lawsuit," Techdirt, July 17, 2013, available at

4  https://www.techdirt.com/articles/20130717/17435223843/perfect-10-loses-yet-

5  another-ridiculous-copyright-lawsuit.shtml; "Judge Gives Perfect 10 a Zero in

6  Google Suit," John Paczkowski, AllThingsD, August 5, 2011, available at

7  http://allthingsd.com/20110805/judges-give-perfect-10-a-zero-in-google-suit/;

8  "Perfect 10 Loses Copyright Suit Against USENET Service Provider," Eric

9  Goldman, Technology & Marketing Law Blog, November 25, 2014, available at

10  http://blog.ericgoldman.org/archives/2014/11/perfect-10-loses-copyright-suit-

11  _____

12  Spoliation Of Evidence By Perfect 10, Inc.), 937 (order granting Google summary
judgment of eligibility for DMCA safe harbors), 1212 (entering voluntary dismissal

13  with prejudice); *Yandex*, Dkt. No. 232 (N.D. Cal.) (granting partial summary
judgment of no direct or contributory infringement for photos hosted on

14  extraterritorial servers, and no direct infringement for image search results on fair

15  use grounds); *Giganews*, Dkt. Nos. 97 (granting motion to dismiss direct and some
secondary infringement claims), 129 (granting motion to dismiss some secondary

16  infringement claims), 619 (granting summary judgment for defendants on direct

17  infringement), 628 (final judgment for defendants) (C.D. Cal) (after dismissing
some claims on a motion to dismiss, court granted summary judgment for

18  Giganews, finding (Dkt. 619) "the undisputed evidence demonstrates that

19  Defendants' automated, content-neutral systems are not the direct cause of any
infringement at issue in this action").

20

21      [3] *See, e.g., Google*, Dkt. No. 953 (C.D. Cal.), *aff'd* 653 F.3d 976 (9th Cir. 2011)
(denying preliminary injunction because Perfect 10 had not established that was

22  likely to succeed on the merits);   *Rapidshare*, Dkt. No. 71 (S.D. Cal.) (denying

23  preliminary injunction because "[p]laintiff has not met its burden of showing that it
is likely to succeed on the merits of its claims for direct and contributory copyright

24  infringement."); *Yandex*, Dkt. No. 232 (N.D. Cal.) (denying preliminary injunction

25  because "Perfect 10 has failed to establish a causal relationship between its serious
financial woes and the alleged infringement" and "Perfect 10 has not established a

26  likelihood of success on the merits"); *Giganews*, Dkt. No. 88 (C.D. Cal.) (denying

27  preliminary injunction because "[t]here is no proof, however, that the alleged
conduct of defendants is what brought Plaintiff on the verge of bankruptcy.")

28

1 | against-usenet-service-provider-perfect-10-v-giganews.htm.

2 |    With no real business operations to speak of, Perfect 10 generates revenue
3 | by extracting settlements from its litigation targets who wish to avoid the prospect
4 | of protracted (even if ultimately meritless) litigation.   According to Perfect 10's
5 | CEO Norm Zada, Perfect 10 is not successful with its settlements either.   *See*
6 | "Perfect 10 CEO: Porno troll or copyright crusader (or both)?", Allison Frankel,
7 | Reuters, May 11, 2012, available at http://blogs.reuters.com/alison-
8 | frankel/2012/05/11/perfect-10-ceo-porno-troll-or-copyright-crusader-or-both/
9 | (Perfect 10 "has settled cases against Microsoft, Amazon, Megaupload and
10 | RapidShare, but according to Zada, his legal fees have slightly outpaced what he's
11 | recovered in settlements. 'If our fees were $18 million, settlements were probably
12 | $16 million,' he said.")

13 |    *OVH SAS.*   OVH SAS is a French corporation organized under the laws of
14 | France, with its principal place of business in Roubaix, France.   Declaration of
15 | Stéphane Lesimple ("Lesimple Decl.") ¶ 4.   OVH SAS provides self-managed (or
16 | "dedicated") computer servers, cloud hosting, mutualized web hosting, domain
17 | registration and VOIP telephony services throughout Europe.   *Id.* ¶ 5.   OVH SAS's
18 | dedicated server business provides the necessary infrastructure for customers to
19 | upload and store data (including email and websites) relevant to their businesses.
20 | *Id.* ¶ 5.   This means that with dedicated servers, the customer is able to fully
21 | customize its servers to suit its needs, while OVH SAS maintains the hardware and
22 | infrastructure to support those servers, such as physical facilities and internet
23 | connectivity.   *Id.* ¶ 5.   Notable OVH SAS customers include the office of the
24 | French President, Francois Hollande; French tire manufacturer Michelin; and NRJ
25 | Group, a brand of corporate commercial radio stations in Europe.

26 |    *OVH Hebergement Inc.*   Hebergement OVH Inc. is a Canadian company
27 | headquartered in Quebec, Canada.   Lesimple Decl. ¶ 19.   Hebergement OVH Inc.
28 | provides Internet infrastructure services, using its data centers located in

1  Beauharnois, Quebec, Canada.  *Id.* ¶ 19.   Though they are both a part of the OVH

2  family of companies, OVH SAS and Hebergement OVH Inc. do not have a parent-

3  subsidiary relationship, nor do they share the same parent company.  *Id.* ¶¶ 19-20.

4        B.    Perfect 10's Allegations of Infringement

5        In its complaint, Perfect 10 alleges that the OVH defendants are or were

6  "hosting websites on their servers on which images that infringe upon Perfect 10's

7  copyrighted images are stored."  Complaint ¶¶ 7.1-7.2, 27-29.   The Complaint

8  goes on to identify 17 specific websites at issue in the lawsuit: "celeb.to,

9  celebforum.to, daily-ladies.com, gallery-dump.com, erooups.com, gophoto.us,

10  hatuncenter.net, imagechunk.com, sualize.us, imgmaster.net, imagerise.com,

11  ohfree.net, pixhost.eu, redblow.com, tuxboard.com, visualizeus.com, and

12  wallpaperpanda.com."  *Id.* ¶ 27.   Perfect 10 does not allege that any one of these

13  17 websites is (or ever has been) hosted on an OVH server located in the United

14  States.   Nor does Perfect 10 allege that either OVH defendant engaged in any

15  volitional act of infringement, such as uploading the images in question to the

16  websites in question.   Instead, the crux of Perfect 10's claims is that the OVH

17  defendants are "selling hosting services to website operators who [in turn] infringe

18  Perfect 10's copyrighted material by displaying infringing Perfect 10 images on

19  their websites."  *Id.* ¶ 7.1.

20        Based on these allegations, Perfect 10 has brought claims for direct and

21  contributory copyright infringement under the United States Copyright Act, against

22  both Hebergement OVH and OVH SAS.  *See* Complaint at 9-11.  Perfect 10's

23  complaint levies its allegations against both OVH defendants without distinguishing

24  between the two in any meaningful way.

25        C.    Facts Subject to Judicial Notice

26        Judicially noticeable facts confirm that none of the 17 allegedly infringing

27  websites Perfect 10 identifies in its Complaint has ever been hosted on an OVH

28  server located in the United States.   Of the 17 websites pleaded, 12 are or were

1  stored on OVH SAS-owned servers located in France and leased to OVH SAS

2  customers.   *See* Defendants' Request for Judicial Notice Exs. A-L, N-Q, W, X.

3  Four of the websites are or were stored on Hebergement OVH Inc.–owned servers

4  located in Canada and leased to Hebergement OVH Inc. customers.   *See id.* Exs. M,

5  R, S, T, Y, Z.   The final website, pixhost.eu, has no public history of being hosted

6  on any OVH-owned server at any time.   *See id.* Exs. U, V.   In sum, all of the

7  allegedly infringing websites pleaded in the Complaint were, during the period they

8  were stored on an OVH-owned server, located outside the United States.

9        D.    OVH SAS's Lack of Contacts With This Forum

10        OVH SAS is a French company with its headquarters, business operations

11  and personnel located in France.[4]   Lesimple Decl. ¶¶ 4, 12, 19.   The dedicated

12  servers OVH SAS rents to its customers are housed in data centers located in

13  France.   *Id.* ¶ 19.   None of the servers owned by OVH SAS are located in the

14  United States.   *Id.* ¶ 11.

15        OVH SAS has no business operations based in California or the United States

16  generally.   Lesimple Decl. ¶ 11.   OVH SAS has not registered to do business in

17  California or any other state, and is not regulated by any California or federal

18  government agency.   *Id.* ¶ 11.   OVH SAS does not own or rent property in

19  California or any other state, and it has no United States investments.   *Id.* ¶ 11.   It

20  does not maintain an office, mailing address or telephone number in California or

21  the United States, and has not designated an agent for service of process in any U.S.

22  state.   *Id.* ¶¶ 11, 13.   None of OVH SAS's officers and directors reside in or are

23  domiciled in the United States.   *Id.* ¶ 12.

24

25    [4]    OVH SAS has subsidiaries in Spain, Germany, United Kingdom, Ireland,
      Italy, Poland, Netherlands, Finland, Portugal, Lithuania, Czech Republic, Tunisia,
26    Morocco, and Senegal.   Lesimple Decl. ¶ 8.   OVH SAS does not have a subsidiary
      in the United States or in Canada.   *Id.*   Contrary to the assertions in the Complaint
27    (*see* Dkt. 1 at 14), Hebergement OVH Inc. is not a subsidiary of OVH SAS.   *Id.*

28

1   OVH SAS does not direct any advertising specifically toward U.S. residents
2   or California residents in particular.   Lesimple Dec. ¶ 14.   The only website
3   through which customers can purchase OVH SAS services, https://www.ovh.com/fr,
4   is written entirely in French and only accepts payment in Euros.[5]   *Id.* ¶ 16.   In
5   2013, OVH SAS earned just over one-tenth of one percent of its revenues (0.12% to
6   be precise) from U.S.-based sources.   *Id.* ¶ 18.

7   Of the 17 websites identified in the Complaint, 12 were stored on an OVH
8   SAS-owned dedicated server by an OVH SAS customer at some point in time.
9   Lesimple Dec. ¶ 9.   None of those customers were associated with a United States
10  or California address.   *Id.* ¶ 9.   The other 5 websites identified in the complaint
11  have never been stored on an OVH SAS-owned server.

## III.   LEGAL STANDARDS

### A.   Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)

14  Rule 12(b)(2) governs dismissals for lack of personal jurisdiction.   It is the
15  plaintiff's burden to establish the court's personal jurisdiction over a defendant.
16  *See, e.g., Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1019 (9th Cir. 2002).
17  A court assessing personal jurisdiction in the context of a Rule 12(b)(2) motion is
18  under no obligation to consider the allegations in a complaint as true and may
19  consider evidence presented in affidavits or by other means.   *Data Disc, Inc. v. Sys.*
20  *Tech. Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977).

21  "For a court to exercise personal jurisdiction over a nonresident defendant,
22  that defendant must have at least 'minimum contacts' with the relevant forum such
23  that the exercise of jurisdiction 'does not offend traditional notions of fair play and
24  substantial justice.'"   *Schwarzenegger v. Fred Martin Mot. Co.,* 374 F.3d 797, 801
25  (9th Cir. 2004) (citing *Int'l Shoe v. Washington,* 326 U.S. 310, 316 (1945)).

___

[5]   The terms of service for the https://www.ovh.com/fr website are likewise
written in French and in accordance with French law.

1   "Minimum contacts" may be satisfied through either "general jurisdiction" or with

2   "specific jurisdiction."   *Doe v. Unocal Corp.,* 248 F.3d 915, 924 (9th Cir. 2001).

3   General jurisdiction may only be asserted where the corporation's "affiliations with

4   the State are so continuous and systematic as to render them essentially at home in

5   the forum State."   *Goodyear Dunlop Tires Ops., S.A. v. Brown,* --- U.S. ---, 131 S.

6   Ct. 2846, 2851 (2011).   Specific jurisdiction exists only where (1) the defendant

7   performed "some act by which it purposely avail[ed] itself of the benefits and

8   protections of forum law" and (2) the plaintiff's cause of action arose from that act.

9   *Kramer Motors v. British Leyland, Ltd.,* 628 F.2d 1175, 1178 (9th Cir. 1980).

10      Additionally, for both general and specific personal jurisdiction, the exercise

11  of the court's power must be "reasonable."   *See, e.g., Burger King Corp. v.*

12  *Rudzewicz,* 471 U.S. 462, 474 (1985) (for general personal jurisdiction, "defendant's

13  conduct and connection with the forum State are such that he should reasonably

14  anticipate being haled into court there.") (citing *World-Wide Volkswagen Corp. v.*

15  *Woodson,* 444 U.S. 286, 295 (1980)); *Schwarzenegger,* 374 F.3d 802 (for specific

16  personal jurisdiction, "the exercise of jurisdiction must comport with fair play and

17  substantial justice, i.e., it must be reasonable.") (quoting *Lake v. Lake,* 817

18  F.2d 1416, 1421 (9th Cir. 1987)).

19      B.   Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

20      A complaint is subject to dismissal if it fails to state a claim upon which relief

21  can be granted.   *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a

22  complaint must contain sufficient factual matter, accepted as true, to 'state a claim

23  to relief that is plausible on its face.' A claim has facial plausibility when the

24  plaintiff pleads factual content that allows the court to draw the reasonable inference

25  that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S.

26  662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556,

27  570(2007)).

28      The plausibility standard articulated in *Twombly* and *Iqbal* imposes on

1   plaintiff an "obligation to provide. . . more than labels and conclusions, and a

2   formulaic recitation of the elements of a cause of action will not do." *Twombly,*

3   550 U.S. at 555 (internal quotation marks and ellipsis omitted).   Rather, a plaintiff

4   must plead facts demonstrating "more than a sheer possibility that a defendant has

5   acted unlawfully.   Where a complaint pleads facts that are merely consistent with a

6   defendant's liability, it stops short of the line between possibility and plausibility of

7   entitlement to relief." *Iqbal,* 556 U.S. at 678(internal quotation marks and citation

8   omitted).   Determining whether a complaint states a plausible claim for relief is "a

9   context-specific task that requires the reviewing court to draw on its judicial

10   experience and common sense.   But where the well-pleaded facts do not permit the

11   court to infer more than the mere possibility of misconduct," the complaint has not

12   shown that the pleader is entitled to relief.   *Iqbal,* 556 U.S. at 679 (internal citation,

13   alteration, and quotation marks omitted); *see Moss v. U.S. Secret Serv.,* 572 F.3d

14   962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-

15   conclusory 'factual content,' and reasonable inferences from that content, must be

16   plausibly suggestive of a claim entitling the pleader to relief.") (citing *Iqbal,* 556

17   U.S. at 678).

18        To determine whether a complaint states a claim sufficient to withstand

19   dismissal, a court may consider not only the contents of the complaint, but also any

20   "materials incorporated into the complaint by reference, and matters of judicial

21   notice." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012); *Lee*

22   *v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).   The Court may also

23   properly consider documents referred to in the pleadings, even if plaintiff does not

24   include such document as part of its pleading.   C. Wright & A. Miller, 5B FEDERAL

25   PRACTICE AND PROCEDURE, § 1357 (3d ed. 2014); Fed. R. Civ. P. 10(c).

26

27

28

1  **IV.   ARGUMENT**

2   A.   THERE IS NO BASIS FOR EXERCISING PERSONAL

3   JURISDICTION OVER OVH SAS

4    1.   OVH SAS is Not Subject to General Jurisdiction in California

5   The Complaint should be dismissed as to OVH SAS for lack of personal

6  jurisdiction pursuant to Rule 12(b)(2).   As the Supreme Court recently recognized

7  in *Daimler AG v. Bauman*, 134 S. Ct. 746, 760-61 (2014), "only a limited set of

8  affiliations with a forum will render a defendant amenable to all-purpose jurisdiction

9  there"; indeed, even the fact that a corporation "engages in a substantial, continuous,

10  and systematic course of business" in the state is not enough.   *Bauman*, 134 S. Ct.

11  at 760-61.   Rather, the contacts must be "so 'continuous and systematic' as to

12  render it *essentially at home* in the forum State."   *Id.* (emphasis added) (quoting

13  *Goodyear Dunlop*, 131 S. Ct. at 2851).

14   There is no question that general jurisdiction over OVH SAS does not lie.

15  Of all of the factors typically considered in the general jurisdiction analysis, ***not one***

16  is present here.   *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082,

17  1086 (9th Cir. 2000).   As discussed above, OVH SAS has no offices or employees

18  in California, pays no California taxes, does not own or lease property in California,

19  has not designated an agent for service of process in California, and is not regulated

20  by any California state agency.   Lesimple Decl. ¶¶ 11, 13.   OVH SAS does not

21  direct any print or online advertising specifically toward California residents in

22  particular, nor does it advertise in any publications that are directed primarily

23  toward California residents.   *Id.* ¶ 14.   It also is not registered to do business in

24  California.   *Id.* ¶ 11.   OVH SAS derives just a scant amount of incidental revenues

25  from U.S. sources.   *Id.* ¶ 18.   In short, OVH's contacts with California are not

26  substantial, continuous or systematic.   They certainly do not render OVH SAS

27  "*essentially at home*" in California.   *Bauman*, 134 S. Ct. at 760-61.

28   The Ninth Circuit has squarely rejected claims of general jurisdiction under

1  these circumstances. *See, e.g., Collegesource, Inc. v. Academyone, Inc.*, 653 F.3d
2  1066, 1074 (9th Cir. 2011) (finding no general jurisdiction where defendant "has no
3  offices or staff in California; is not registered to do business in the state; has no
4  registered agent for service of process; and pays no state taxes."); *see also*
5  *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016-18 (Fed. Cir.
6  2009) (applying Ninth Circuit law, holding that due process does not permit general
7  jurisdiction over foreign company that derived just 1% of annual revenue from
8  California customers).

9         2.   OVH SAS is Not Subject to Specific Jurisdiction in California
10        Specific jurisdiction exists only if (1) OVH SAS "purposefully direct[ed] [its]
11  activities or consummate[d] some transaction with the forum or resident thereof; or
12  perform[ed] some act by which [it] purposefully avails [it]self of the privilege of
13  conducting activities in the forum, thereby invoking the benefits and protections of
14  its laws," and (2) Perfect 10's causes of action arose from that act.
15  *Schwarzenegger*, 374 F.3d at 802 (quotation omitted). The Ninth Circuit has
16  explained that in copyright cases, it is the "purposeful direction" analysis that
17  governs, rather than "purposeful availment," which is typically applied to contract
18  actions. *Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1128 (9th
19  Cir. 2009). The Ninth Circuit applies the three-factor "Calder effects" test in
20  analyzing purposeful direction, requiring the plaintiff to establish that the defendant
21  "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing
22  harm that the defendants knows is likely to be suffered in the forum state." *Id.*
23  (quoting *Yahoo! v. La Ligue Contre La Racisme,* 433 F.3d 1199, 1206 (9th Cir.
24  2006)). Perfect 10 cannot meet these elements here.
25        OVH SAS has done nothing to purposefully direct or expressly aim any act at
26  California—let alone an act that OVH SAS knew would inflict harm within
27  California. OVH SAS is a passive Internet infrastructure provider with its business
28  operations, including all data centers, located in France. Lesimple Decl. ¶¶ 4, 5. It

1 | has no business operations in, or directed to residents of, California. *Id.* ¶¶ 11, 14.

2 | While anyone in the world can purchase OVH SAS web hosting services from

3 | www.ovh.com/fr, that website is in no way directed to California residents—the site

4 | is entirely in French, and accepts only Euros as payment. *Id.* ¶ 16. Only trace

5 | amounts of OVH SAS's revenues come from U.S.-based sources. *Id.* ¶ 18 (.12% in

6 | 2013). The law is clear that the mere fact that OVH SAS maintains an online

7 | service that can be accessed by forum residents is not enough, without "something

8 | more" that shows the defendant specifically targeted forum residents. *Pebble*

9 | *Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006); *see also Web.com, Inc. v.*

10 | *Go Daddy Grp., Inc.*, No. 06-1461, 2007 WL 7035105, at *3 (N.D. Ga. Aug. 3,

11 | 2007) (finding no personal jurisdiction where 3% of webhosting service provider's

12 | customers resided in Georgia, because "[m]erely selling services over the Internet to

13 | all potential visitors is not an action purposefully directed at Georgia").

14 | Moreover, Perfect 10's claims did not arise from any forum-related activities.

15 | Perfect 10's claims rest entirely on the allegation that OVH SAS rented servers on

16 | which the operators of 17 third-party websites elected to upload and store allegedly

17 | infringing images. But *none* of the allegedly infringing websites that are or were

18 | stored on servers rented from OVH SAS involved a customer located in California

19 | (or the United States), or a server located in California (or the United States).

20 | Lesimple Decl. ¶ 9. Nor could they, since OVH SAS does not *have* any dedicated

21 | servers in California or the United States. *Id.* ¶ 19; *see also* Defendants' Request

22 | for Judicial Notice (setting forth judicially noticeable facts showing that 12 of the 17

23 | allegedly infringing websites are or were stored by customers on dedicated servers

24 | owned by OVH SAS and located in France). Accordingly, there is no specific

25 | personal jurisdiction over OVH SAS concerning Perfect 10's claims.

26 | 3. OVH SAS is Not Subject to National Jurisdiction

27 | Nor is OVH SAS subject to nationwide jurisdiction under Federal Rule of

28 | Civil Procedure 4(k)(2). The Rule 4(k)(2) analysis is functionally identical to the

1 ordinary personal jurisdiction test, except that it looks to contacts with the United

2 States as a whole.   *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d

3 450, 461-62 (9th Cir. 2007).   Stated another way, Perfect 10 must prove either that

4 OVH SAS's United States contacts are "so 'continuous and systematic' as to render

5 it *essentially at home* in" the United States, or that OVH SAS "purposefully

6 direct[ed] his activities or consummate[d] some transaction with" the United States,

7 and that Perfect 10's claims arose from that transaction.   *See* Part IV(A)(1), *supra.*

8 Neither is true here.

9      OVH SAS's *de minimis* contacts with the United States as a whole are

10 materially identical to its contacts with California.   Specifically, OVH SAS earns

11 only a trace amount of its revenue from U.S. consumers, incidental to its provision

12 of services to its primarily French and European customer base.   Lesimple Decl. ¶

13 18.   OVH SAS has no offices or employees in the United States, owns no property

14 or investments in the United States, is not incorporated or licensed to do business in

15 any U.S. state, does not pay taxes in any state, and is not regulated by any United

16 States governmental entity.   *Id.* ¶ 11.   Moreover, of the 17 allegedly infringing

17 websites identified in the complaint, only one, ohfree.net (*see* Dkt. 1 at 28), is

18 alleged to be "operated" by a third party located in the United States.   But, even

19 that stray contact is not attributable to OVH SAS because the server on which

20 ohfree.net is being hosted is ***not*** owned or operated by OVH SAS.   *Id.* ¶ 10.

21      As such, OVH SAS lacks sufficient contacts with the United States as a

22 whole to subject it to suit here.   *Pebble Beach*, 453 F.3d at 1159 (overseas website

23 was not subject to jurisdiction under Rule 4(k)(2) even though it "occasionally

24 service[d] Americans").

25           4.   Jurisdiction over OVH SAS Would Be Unreasonable.

26      Even if there were some basis for jurisdiction over OVH SAS—and there is

27 not—the exercise of jurisdiction would be unreasonable and would fail to "comport

28 with fair play and substantial justice."   *Schwarzenegger*, 374 F.3d at 802.   In

1    evaluating reasonableness, courts must consider:

2         (1) the extent of the defendant's purposeful injection into the forum;

3         (2) the defendant's burdens from litigating in the forum; (3) the extent

4         of conflict with the sovereignty of the defendant's state; (4) the forum

5         state's interest in adjudicating the dispute; (5) the most efficient judicial

6         resolution of the controversy; (6) the importance of the forum to the

7         plaintiff's interest in convenient and effective relief; and (7) the

8         existence of an alternative forum.

9    *Ziegler v. Indian River Cnty.,* 64 F.3d 470, 474-75 (9th Cir. 1995).   A court should

10   weigh all seven factors, as no single factor is dispositive.   *Id.* at 475.

11        In this case, every factor weighs ***against*** jurisdiction over OVH SAS.   As

12   discussed above, OVH SAS has not conducted any material business dealings in

13   California or the Unites States as a whole.   Neither California nor the United States

14   has any interest in litigating this dispute, particularly given that Perfect 10 has

15   alleged infringement that occurred outside the United States, and thus is not even

16   actionable under the United States Copyright Act.   *See* Part IV(B)(1), *infra.*

17   Moreover, litigating this action in the U.S. would pose a great burden to OVH SAS,

18   as the individuals who may have information or knowledge related to Perfect 10's

19   allegations are French nationals who reside in France and who either do not speak

20   English or do not speak English as a first language.   Lesimple Decl. ¶ 22(e).

21   Additionally, as a French company subject to French law, OVH SAS may find itself

22   facing an impossible choice of complying with its obligations under French law

23   (which governs conduct pertaining to servers located within French borders) or

24   complying with United States law (which does not extend to conduct on French-

25   domiciled servers, in any event, as discussed in Part IV(B)(1), *infra*).   *Id.* ¶ 22(f).

26   Furthermore, there is a more suitable—and indeed superior—alternative forum for

27   Perfect 10's claims:   the French courts.   French law governs conduct on servers in

28   France, and sets forth a protocol whereby copyright owners can request assistance of

1  hosting and infrastructure companies such as OVH SAS.  *Id.* ¶ 21.   Given the
2  availability of an alternative forum, this forum's lack of interest in adjudicating this
3  extraterritorial dispute, and the undue burden to OVH SAS of litigating in the
4  United States, a serial litigant like Perfect 10 should not be permitted to force OVH
5  SAS, a foreign company with only *de minimis* contacts, to defend this case in this
6  forum.

7      B.   PERFECT 10 FAILS TO PLEAD A VALID CLAIM FOR
8           COPYRIGHT INFRINGEMENT

9      Perfect 10 asserts claims for both direct and contributory copyright
10  infringement against the OVH defendants.   Direct infringement occurs where: 1)
11  the plaintiff owns a valid copyright in allegedly infringed materials; and 2) the
12  defendant engaged in conduct constituting a violation of at least one exclusive right
13  granted to copyright holders under 17 U.S.C. § 106.  *Ellison v. Robertson*, 357 F.3d
14  1072, 1076 (9th Cir. 2004).   Contributory infringement requires proof that the
15  defendant "intentionally induc[ed] or encourage[ed] direct infringement" by a third
16  party.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930
17  (2005).   The Complaint should be dismissed as to both OVH defendants pursuant to
18  Rule 12(b)(6) because Perfect 10 has failed to properly plead either claim.

19          1.   Perfect 10 Fails to Allege a Single Instance of Territorial
20               Infringement to Support Either Its Direct or Contributory
21               Infringement Claims

22      It is well-established that the Copyright Act has no extraterritorial application
23  and "presumptively does not apply to conduct that occurs abroad even when that
24  conduct produces harmful effects within the United States."  *Omega S.A. v. Costco*
25  *Wholesale Corp.*, 541 F.3d 982, 988 (9th Cir. 2008),*aff'd* 562 U.S. 40 (2010),
26  *abrogated on other grounds by Kirtsaeng v. John Wiley & Sons, Inc.*, --- U.S. ---,
27  133 S.Ct. 1351 (2013).   As explained in the Ninth Circuit's seminal *Subafilms* case:
28      Because the copyright laws do not apply extraterritorially, each of the

                                        -15-                    Case No. 14-CV-05969-R-FFM

1       rights conferred under the five section 106 categories must be read as

2       extending 'no farther than the [United States'] borders.' . . . [W]e

3       reaffirm that the United States copyright laws do not reach acts of

4       infringement that take place entirely abroad.

5 *Subafilms Ltd. v. MGM-Pathe Comm'n Co.*, 24 F.3d 1088, 1093, 1098 (9th Cir.

6 1994).   Simply put, "extraterritorial acts of infringement cannot support a claim

7 under the Copyright Act." *Id.*   Rather, in order to plead an actionable claim, a

8 plaintiff must allege an act of infringement that occurred within the United States.

9 *See, e.g., Elmo Shropshire v. Canning*, No. 10–CV–01941–LHK, 2011 WL 90136,

10 at *3 (N.D. Cal. Jan. 11, 2011) ("For the Copyright Act to apply, at least one alleged

11 infringement must be completed entirely within the United States.") (quoting *Los*

12 *Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 990-91 (9th Cir.

13 1998).[6]

14

---

15     [6]   The last district court within the Ninth Circuit to consider this issue construed

16 extraterritoriality as a necessary element of a copyright infringement claim.   *See*

17 *Perfect 10 v. Yandex*, 962 F. Supp. 2d 1146, 1154 (N.D. Cal. 2013); *see also*

18 *Shropshire*, 809 F. Supp. 2d at 1144 ("In the pending action, therefore, the Court finds that *Arbaugh* [*v. Y&H Corp.*, 546 U.S. 500, 516 (2006)] requires

19 extraterritoriality to be decided as an element of a claim for copyright infringement rather than an issue of subject matter jurisdiction.").   Some courts, however, find

20 that extraterritoriality is a question of subject matter jurisdiction, rather than an element of a plaintiff's claim.   *See, e.g., Rundquist v. Vapiano SE*, 798 F. Supp. 2d

21 102, 123 (D.D.C. 2011) ("Consequently, a foreign actor who engages in or

22 authorizes infringing activity while abroad, and no part of the infringing activity

23 takes place in the United States, does not thereby violate U.S. copyright law and U.S. courts do not have subject matter jurisdiction over claims arising from that

24 foreign activity.").   Either way, however, the result is the same – the claims must be

25 dismissed.   Should the Court elect to view this question as a matter of its subject matter jurisdiction, rather than as a pleading failure, then the OVH Defendants

26 alternately move to dismiss these extraterritorial claims for lack of subject matter

27 jurisdiction under Fed. R. Civ. P. 12(b)(1).   Perfect 10's burden in opposing such a motion is the same as for a motion for summary judgment under Rule 56.   *See, e.g.,*

28

1    Likewise, because the Copyright Act applies only to acts of infringement that

2    occur within the United States, claims of contributory infringement are not

3    cognizable under the Copyright Act unless the underlying act of direct infringement

4    occurred within the United States.   *See, e.g., Subafilms*, 24 F.3d at 1093 ("[U]nder

5    the Copyright Act, for which no similar legislation has been passed, liability for

6    contributory infringement cannot be based on an infringement that takes place

7    overseas").

8    Here, Perfect 10's claims for both direct and contributory copyright

9    infringement fail as a matter of law because, as pleaded, they are premised on

10   extraterritorial acts of direct infringement.   In the context of infringement alleged to

11   have taken place on the Internet, the Ninth Circuit's well-established "server test"

12   recognizes that an infringement "takes place" at the location of the computer

13   responsible for hosting the allegedly infringing content.   *Perfect 10, Inc. v.*

14   *Amazon.com, Inc.*, 508 F.3d 1146, 1159-60 (9th Cir. 2007) ("[I]t is the website

15   publisher's computer, rather than [the search engine's] computer, that stores and

16   displays the infringing image.").   Thus, where an allegedly infringing website is

17   hosted on a computer server that is located outside the United States, no claim for

18   direct infringement under the U.S. Copyright Act lies.   *Perfect 10 v. Yandex*, 962

19   F. Supp. 2d 1146, 1154 (N.D. Cal. 2013) ("This order accordingly holds that

20   Yandex's hosting of full-sized Perfect 10 images on servers in Russia does not

21   constitute direct copyright infringement in the United States.").

22   That is precisely what Perfect 10 has pleaded here—entirely extraterritorial

23

24   *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1559 (9th Cir.

25   1987) ("The requirement that the nonmoving party present evidence outside his
     pleadings in opposition to a motion to dismiss for lack of subject matter jurisdiction

26   is the same as that required under Rule 56(e) that the nonmoving party to a motion

27   for summary judgment must set forth specific facts, beyond his pleadings, to show
     that a genuine issue of material fact exists.").

28

acts of direct infringement.   As a threshold pleading matter, Perfect 10's complaint does not clearly allege a single instance of territorial infringement that satisfies the plausibility standard articulated in *Twombly* and *Iqbal.*   *Twombly,* 550 U.S. at 555; *Iqbal,* 556 U.S. at 678.   Nowhere in its complaint does Perfect 10 allege that even a single one of the 17 allegedly infringing websites are being hosted on OVH-owned servers located in the United States.[7]

The closest Perfect 10 comes is its allegation in Paragraph 7.2 that, upon information and belief, "a number of [the allegedly infringing websites] are located in the United States and, specifically, in California."   Complaint ¶ 7.2.   But of course, the location of the third party company operating the website (which Perfect 10 has vaguely pleaded on information and belief) is ***not*** the same thing as the location of the computer server on which the website is hosted.   Perfect 10 has not pleaded the latter.   In fact, Perfect 10 has affirmatively alleged facts that confirm precisely the opposite:   none of the alleged infringements occurred in the United States because none of the websites identified in the complaint has ever hosted content on an OVH-owned server physically located in the United States.   Indeed, by identifying 17 specific infringing websites, ***each of which judicially noticeable facts confirm is not—and has never been—hosted on an OVH-owned server located in the United States***, Perfect 10's own complaint confirms this case is based

---

[7] Although Perfect 10 claims the OVH defendants have connections to the United States, Perfect 10 tellingly does not claim that any acts of direct infringement alleged to have been committed by the OVH defendants occurred in the United States.   More specifically, Perfect 10 does not allege that either of the OVH defendants owns or operates any servers that are (1) located in the United States and (2) hosting allegedly infringing content.   *Compare* Complaint ¶ 14 (OVH provides webhosting for customers in the United States), ¶ 26 (OVH owns POPs, or access points to the Internet, within the United States) *with* Complaint ¶29 (alleging OVH hosts allegedly infringing material, but no allegations that such infringing material is being hosted on servers located in the United States).

1   solely on extraterritorial acts of infringement and, as a result, must be dismissed.

2         When ruling on a motion to dismiss, a court is entitled to consider factual

3   matter outside the pleadings if such matters constitute facts not subject to reasonable

4   dispute because they (1) are generally known within the trial court's territorial

5   jurisdiction; or (2) can be accurately and readily determined from sources whose

6   accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b); *see also Lee,*

7   250 F.3d at 689.   Such matters subject to judicial notice include government

8   records, geographical facts such as those found on a map, and, as is relevant here,

9   basic registration, IP address[8] and location information pertaining to websites. *See,*

10   *e.g., S. Grouts & Mortars, Inc. v. 3M Co.,* No. 07-61388-CIV, 2008 WL 4346798, at

11   *16 (S.D. Fla. Sept. 17, 2008) *aff'd,* 575 F.3d 1235, 1248-49 (11th Cir. 2009)

12   (taking judicial notice of entities to whom certain domain names were registered);

13   *Liberty Media Holdings, LLC v. Vinigay.com,* No. CV–11–280–PHX–LOA, 2011

14   WL 7430062, at *5, n.10 (D. Ariz. Dec. 28, 2011) (taking judicial notice of physical

15   location of internet server based on IP address ); *Columbia Pictures Indus., Inc. v.*

16   *Fung,* No. CV 06-5578, 2009 WL 6355911, at *9, n.16 (C.D. Cal. Dec. 21, 2009)

17   *aff'd in part as modified,* 710 F.3d 1020 (9th Cir. 2013) (noting that neither side

18   disputed that using IP address lookup tools to determine the physical location of a

19   computer is highly accurate).   Moreover, because of their reliability, judicially

20   noticeable facts "trump" any contradictory allegations contained in a pleading,

21   particularly when such allegations are conclusory or otherwise unsupported. *See,*

22   *e.g., Greeson v. Imperial Irr. Dist.,* 59 F.2d 529, 530 (9th Cir. 1932) ("When a

23   pleader states matter as fact which is out of harmony with facts which the court

24   _____

25   [8] An IP address is a numerical label assigned to each computer participating in a
     computer network that uses the Internet Protocol for communication.   An IP

26   address serves two principal functions: to identify the location of the computer, and

27   the host or network interface of the computer. *See* Defendants' Request for Judicial
     Notice at 2-3.

28

1  judicially knows, the averments in the pleading are disregarded."); *Verde River Irr.*
2  *& Power Dist. v. Salt River Valley Water Users' Ass'n*, 94 F.2d 936, 941 (9th Cir.
3  1938) (same).

4       Here, basic website registration and IP address lookup tools confirm that not
5  one of the 17 allegedly infringing websites identified in Perfect 10's complaint is—
6  or ever has been—stored on an OVH-owned server located inside the United States.
7  *See* Defendants' Request for Judicial Notice.   Rather, these judicially noticeable
8  facts confirm that 12 of the 17 allegedly infringing websites are currently being
9  stored on OVH SAS or Hebergement OVH Inc. servers that are located in France
10  and Canada, respectively.[9]   Judicially noticeable facts likewise confirm that 4 of the
11  17 allegedly infringing websites were at some point previously stored on servers
12  owned by OVH SAS or Hebergement OVH Inc. located in France and Canada
13  respectively; all 4 of these websites presently are being stored on servers not owned
14  by any OVH entity.[10]   The last of the 17 allegedly infringing websites, pixhost.eu,
15  has no public record of ever being hosted on any servers owned by any OVH entity.
16  *See. id.* Exs. U, V.

17       Because judicially noticeable facts, coupled with the matters pled on the face
18  of Perfect 10's complaint, confirm that not one of the 17 allegedly infringing
19  websites has ever been stored on an OVH-owned server located in the United States,
20  Perfect 10 has affirmatively pleaded only extraterritorial copyright infringement.

21  _____

22    [9] As explained in the Request for Judicial Notice, these websites are celeb.to
23  (Ex. A), celebforum.to (Ex. B), daily-ladies.com (Ex. C), gallery-dump.com (Ex.
    D),   erooups.com (Ex. E) gophoto.us (Ex. F), sualize.us (Ex. M), imgmaster.net
24  (Ex. N), redblow.com (Ex. W), tuxboard.com   (Ex. X), visualizeum.com (Ex. Y),
25  wallpaperpanda.com (Ex. Z).

26    [10] As explained in the Request for Judicial Notice, these websites are
27  hatuncenter.net (Ex. G, H, I); imagechunk.com (Ex. J, K, L); imagerise.com (Ex. O,
    P, Q), and ohfree.net (Ex. R, S, T).
28

1  This dooms not only Perfect 10's direct infringement claim, but its contributory

2  claim as well.   Perfect 10's contributory infringement theory relies on the same

3  underlying factual allegation as its direct infringement claim —   that OVH has

4  provided (foreign) server space to alleged third party websites that are directly

5  infringing Perfect 10's copyrights.   *See* Complaint ¶ 35 (defendants contributorily

6  infringe because they are "allowing the infringement of such works to continue on

7  their servers" and are "providing hosting and Internet services to infringing third

8  party websites.")   As explained above, Ninth Circuit law confirms that the act of

9  infringement takes place where the server is located, *Amazon.com, Inc.*, 508 F.3d at

10  1159, and claims of contributory infringement are not cognizable under the

11  Copyright Act where the underlying act of direct infringement occurred outside the

12  United States.   *See, e.g., Subafilms*, 24 F.3d at 1093; *Yandex, 962 F. Supp. 2d at*

13  *1157-58.*   The complaint should therefore be dismissed in its entirety on

14  extraterritoriality grounds.

15          2.   Perfect 10 Fails to Allege Volitional Conduct by Defendants,

16               Which is Necessary for Direct Copyright Infringement

17          Perfect 10's direct infringement claim fails for a second reason as well.   To

18  present a *prima facie* case of direct copyright infringement, Perfect 10 must allege

19  facts establishing:   (1) "ownership of the allegedly infringed material" and (2) that

20  OVH "[it]self violated one or more of the plaintiff's exclusive rights under the

21  Copyright Act."   *Ellison*, 357 F.3d at 1076 (emphasis added).   Direct infringement

22  thus requires "some element of volition or causation" by a defendant.   *Parker v.*

23  *Google, Inc.*, 422 F. Supp. 2d 492, 497 (E.D. Pa. 2006) (citation and quotation

24  marks omitted); *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006);

25  *Religious Tech. Ctr. v. Netcom On-Line Comm'n Servs., Inc.*, 907 F. Supp. 1361,

26  1369-70 (N.D. Cal. 1995) (direct infringement requires a volitional act by

27  defendant); *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 551 (4th Cir. 2004)

28  ("[W]e conclude that Netcom made a particularly rational interpretation of § 106

1   when it concluded that a person had to engage in volitional conduct—specifically,

2   the act constituting infringement—to become a direct infringer.").   As another

3   district judge of this Court has explained:

4          It is not enough that plaintiff allege some passive, non-volitional

5          conduct on the part of defendant that technically amounts to a violation

6          of plaintiff's rights.   Rather, a claim for direct infringement must be

7          dismissed where plaintiff fails to allege "that Defendants actively

8          engage in or directly cause the infringement allegedly committed by

9          their users."

10  *Perfect 10, Inc. v. Giganews, Inc.*, No. 2:11-cv-07098-ABC-SH, 2013 WL 2109963

11  (C.D. Cal. March 8, 2013) (Matz, J.) (dismissing claims for direct infringement

12  pursuant to Rule 12(b)(6) for failure to plead volitional conduct); *see also Perfect*

13  *10, Inc. v. Giganews, Inc.*, Case 2:11-cv-07098-AB-SH, Dkt. 619 (C.D. Cal. Nov.

14  14, 2014) (granting summary judgment on remaining cause of action for direct

15  infringement where plaintiff Perfect 10 could not "show that the defendant himself

16  uploaded or downloaded the files, or directly caused such uploading or downloading

17  to occur...").

18         Courts addressing this volitional-based standard have recognized that "ISPs,

19  when passively storing material at the direction of users in order to make that

20  material available to other users upon their request, do not 'copy' the material in

21  direct violation of § 106 of the Copyright Act."   *Costar Group*, 373 F.3d at 555; *see*

22  *also Ellison v. Robertson*, 189 F. Supp. 2d 1051, 1056-1057 (C.D. Cal. 2002), *rev'd*

23  *on other grounds*, 357 F.3d 1072 (9th Cir. 2004) (passive service provider not

24  responsible for direct infringement as result of user's uploading infringing material);

25  *Netcom,* 907 F.Supp. 1361, 1369-70 (N.D. Cal. 1995) (automated copying by

26  machines occasioned by others not sufficient to establish direct infringement);

27  *CoStar*, 373 F.3d at 555 ("automatic copying, storage, and transmission of

28  copyrighted materials, when instigated by others, does not render an ISP strictly

1    liable for copyright infringement").   Rather, direct liability for copyright

2    infringement in the internet context applies to those entities who are responsible for

3    the actual uploading (ie. copying) of the infringing articles.   *See Netcom*, 907 F.

4    Supp. at 1372-73; *Ellison*, 189 F. Supp. 2d at 1057.

5          Accordingly, allegations that a defendant engaged in automated storage or

6    transmission of copyrighted materials occasioned by the acts of third parties do not

7    state a claim for direct infringement against the storing or transmitting defendant.

8    *Perfect 10, Inc. v. Giganews, Inc.*, Case No. 2:11-cv-07098-ABC-SH, 2013 WL

9    2109963 (C.D. Cal. March 8, 2013) (Matz, J.) (dismissing Perfect 10's claims for

10   direct infringement pursuant to Rule 12(b)(6) for failure to plead volitional conduct

11   by an internet service provider that merely stored content uploaded by third party

12   users); *Parker,* 422 F. Supp. 2d at 497 (dismissing direct infringement claim

13   involving "a system that automatically transmits users' material but is itself

14   indifferent to the material's content").

15         Perfect 10's allegations here suffer from this very deficiency.   The crux of

16   Perfect 10's claims is that the OVH defendants are "selling hosting services to

17   website operators who [in turn] infringe Perfect 10's copyrighted material by

18   displaying infringing Perfect 10 images on their websites."   Complaint ¶ 7.1.

19   Perfect 10 goes on to allege that the OVH defendants "[d]eploy[] a massive

20   communications network in the United States, including thousands of miles of fiber

21   optics and Points of Presence ("POPs) (an access point to the internet)… to transmit

22   tens of thousands of infringing Perfect 10 images between infringing websites and

23   persons in the United States who view and download the images."   *Id.* ¶ 7.3.   This

24   is precisely the type of automated, non-volitional conduct that is routinely dismissed

25   because it does not constitute an act of direct infringement.   *See Perfect 10, Inc. v.*

26   *Giganews, Inc.*, Case No. 2:11-cv-07098-ABC-SH, 2013 WL 2109963 (C.D. Cal.

27   March 8, 2013) (Matz, J.) (dismissing Perfect 10's claims for direct infringement

28   pursuant to Rule 12(b)(6) for failure to plead volitional conduct by an internet

1  service provider that merely stored content uploaded by third party users); *Field,*
2  412 F. Supp. 2d at 1115.   *Compare Playboy Enters., Inc. v. Russ Hardenburgh,*
3  *Inc.*, 982 F. Supp. 503, 508, 513 (E.D. Ohio 1997) (asserting defendants' direct
4  intervention in reviewing and selecting infringing files for release onto system).
5  Perfect 10's claims for direct copyright infringement by both OVH defendants must
6  be dismissed on this basis.

### CONCLUSION

8      For the foregoing reasons, the Court should grant both OVH SAS's Motion to
9  Dismiss for Lack of Personal Jurisdiction pursuant to Rule 12(b)(2), and OVH
10  SAS's and Hebergement OVH Inc.'s Motion to Dismiss for Failure to State a Claim
11  pursuant to Rule 12(b)(6).

13  DATED: January 21, 2015       QUINN EMANUEL URQUHART &
                                     SULLIVAN, LLP

                                     By *Rachel Herrick Kassabian*
                                       Rachel Herrick Kassabian
                                       Attorneys for Defendants OVH SAS and
                                       Hebergement OVH, Inc.